## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, <br><br> Plaintiff <br><br> v. <br><br> HAMMERS CONTRACTORS, INC.; FITLER CONSTRUCTION GROUP LLC; 2330 SANSOM STREET LLC; HANNA MARHUNOVA, as Administratrix of the ESTATE OF SIARHEI MARHUNOU Deceased, and in her Own Right. <br><br> Defendants | Civil Action No. |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Nautilus Insurance Company ("Nautilus") hereby files a Complaint for Declaratory Judgment against Defendants Hammers Contractors Inc. ("Hammers"), Fitler Construction Group LLC ("Fitler"), 2330 Sansom Street LLC ("Sansom") and Hanna Marhunova ("Marhunova"), as Administratrix of the Estate of Siarhei Marhunou ("Siarhei Marhunou") and in her own right, and, for support, alleges the following:

## I.    INTRODUCTION

1.      Nautilus seeks a declaration that it has no duty to defend or indemnify Hammers, Fitler or Sansom under a commercial general liability insurance policy (the "Nautilus Policy") issued to Hammers, in connection with the underlying action captioned, *Hanna Marhunova v. Fitler Construction Group, LLC et al.*, Philadelphia Court of Common Pleas, May Term, 2022, Case Id. 220501520 (the "Underlying Action").

26482016v1

2.      The Underlying Action arises out of a construction accident in which Siarhei Marhunou allegedly sustained serious injuries resulting in his death.

3.      Nautilus is providing separate defenses, under reservations of rights, to Hammers and Fitler in the Underlying Action, but has denied coverage to  Sansom.

4.      In the now Second Amended Complaint filed in the Underlying Action, the plaintiff therein, Marhunova, states (and therefore admits) that Siarhei Marhunou "was an employee of DPSY, Inc." ("DPSY"), who was "acting within the course and scope of his employment" when he fell to his death while performing siding work "on a balcony during the erection of new residential town homes at 2330 Sansom Street in Philadelphia, Pennsylvania (the 'Project')."  *See* Marhunova Second Amended Complaint at ¶¶  26-29, a true and correct copy attached hereto as Exhibit "A."

5.      Fitler similarly admits that Siarhei Marhunou "at all times relevant to the subject matter, was an employee of DPSY, working in the course and scope of his employment with DPSY."  *See* Fitler Joinder Complaint at ¶ 8, a true and correct copy attached hereto as Exhibit "B."

6.      DPSY, in contrast, states (and therefore admits) that Siarhei Marhunou is an "independent contractor" of DPSY.  *See* DPSY Answer at ¶ 8, a true and correct copy attached hereto as Exhibit "C."

7.      Upon information and belief, Hammers does not dispute that Siarhei Marhunou was either an employee or an independent contractor of DPSY.

8.      As such, there is no dispute that Siarhei Marhunou was either an employee or an independent contractor of DPSY at the time of his alleged injuries.

9.      Further, **and importantly**, this Court need **not** determine whether Siarhei Marhunou was either an employee or an independent contractor of DPSY at the time of his alleged injuries – in order to declare that Nautilus has no duty to defend or indemnify Hammers, Fitler or Sansom.

10.      The Nautilus Policy excludes coverage for the Underlying Action so long as Siarhei Marhunou was **either** (a) an employee **or** (b) an independent contractor of DPSY – **or** any of the other things set forth in the below described L205 Exclusion.

11.      Among other things, the Nautilus Policy contains an L205, Injury to Employees, Contractors, Volunteers and Other Workers exclusion ("the "L205 Exclusion"), which bars coverage for "bodily injury" to "employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors of any insured – arising out of and in the course of employment by any insured (or directly or indirectly performing duties related to the conduct of any insured's business).

12.      Fitler Construction Group, LLC retained Hammers as a subcontractor to perform work on the Project.

13.      Nautilus's named insured, Hammers, retained DPSY as a subcontractor which provided siding services for Hammers.

14.      Siarhei Marhunou was either an employee or an independent contractor of DPSY at the time of his alleged injuries.

15.      Similarly, at the time of his alleged injury, Siarhei Marhunou was an "employee", "leased worker", "temporary worker", "volunteer worker", statutory "employee", casual worker,

seasonal worker, contractor, subcontractor, or independent contractor of any insured – as such terms are used in the L205 Exclusion.

16.     As such, the L205 Exclusion precludes coverage under the Nautilus Policy for the claims and injuries alleged in the Underlying Action.

17.     For this reason and the other reasons discussed below (including because Fitler and Sansom do not qualify as additional insureds for purposes of the Underlying Action), Nautilus requests that this Court enter judgment in its favor declaring that Nautilus has no duty to defend or indemnify Hammers, Fitler or Sansom.

## II.   **PARTIES**

18.     Nautilus Insurance Company ("Nautilus") is a citizen of Arizona, being a corporation that is incorporated in the State of Arizona and which maintains its principal place of business at 7233 East Butherus Drive, Scottsdale, Arizona 85260.

19.     Upon information and belief, Defendant Hammers Contractors Inc. ("Hammers") is a citizen of Pennsylvania, being a corporation or other business entity organized and existing under the laws of Pennsylvania and which maintains its principal place of business at 70 Tracey Road, Unit C, Huntington Valley, PA 19006.

20.     Upon information and belief, Defendant Fitler Construction Group LLC ("Fitler") is a citizen of Pennsylvania, being a corporation or other business entity organized and existing under the laws of Pennsylvania and which maintains its principal place of business at 1801 N. American Street, Suite 2A, Philadelphia, PA 19122.

21.     Upon information and belief, Defendant 2330 Sansom Street LLC ("Sansom") is a citizen of Pennsylvania, being a corporation or other business entity organized and existing under the laws of Pennsylvania and which maintains its principal place of business at 1936 Washington Ave., Philadelphia, PA 19146.

4

22.     Upon information and belief, Defendant Hanna Marhunova ("Marhunova") is citizen of Pennsylvania, being an adult individual and resident of the Commonwealth of Pennsylvania, residing at 3428 Ashfield Lane, Philadelphia, PA 19114.

23.     Upon information and belief, at all relevant times, Defendant Marhunova was the lawfully wedded wife of Siarhei Marhunou.

24.     Upon information and belief, at the time of his death, and at all relevant times, Siarhei Marhunou was an adult individual and resident of the Commonwealth of Pennsylvania residing at 3428 Ashfield Lane, Philadelphia, PA 19114.

## III.    **JURISDICTION**

25.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

26.     The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, because, among other reasons, the value of the Nautilus Policy under which Hammers, Fitler and Sansom seek a defense and/or indemnification from Nautilus exceeds $75,000; the cost of the defense Nautilus is providing would, if Nautilus is obligated to continue that defense, exceed $75,000; and the plaintiff in the Underlying Action, Marhunova, seeks recovery of an amount of $1 million or more from Hammers, Fitler and/or Sansom.

27.     This matter is between citizens of different states.

28.     Nautilus is a citizen of Arizona, where it is incorporated and maintains its principal place of business.

29.     Marhunova is a citizen of Pennsylvania, the state in which she is domiciled.

30.     Prior to his death, Siarhei Marhunou was a citizen of Pennsylvania, the state in which he was domiciled.

31.     Hammers is a citizen of Pennsylvania, the state in which it was incorporated and maintains its principal place of business.

32.     Fitler is a citizen of Pennsylvania, the state in which it was incorporated and maintains its principal place of business.

33.     Upon information and belief, no member of Fitler is a citizen of Arizona.

34.     Sansom is a citizen of Pennsylvania, the state in which it was incorporated and maintains its principal place of business.

35.     Upon information and belief, no member of Sansom is a citizen of Arizona.

36.     This Court also has jurisdiction of this matter pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), because this matter presents a case of actual controversy and seeks an order declaring the rights and legal relations of the parties to this action.

37.     Hammers, Fitler and Sansom seek a defense and/or indemnification under the Nautilus Policy in connection with the Underlying Action.

38.     Also, the plaintiff in the Underlying Action, Marhunova, has demanded that Nautilus pay its policy limits.

39.     Nautilus disputes that it owes defense or indemnity to Hammers, Fitler or Sansom, as well as disputes that it has any obligation to pay any settlement or judgment in favor of Marhunova in the Underlying Action.

## IV.   <u>VENUE</u>

40.     Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. §1391(b)(1) and (b)(2).

41.     Venue in this District is proper under § 1391(b)(1) because all Defendants to this action reside in the Eastern District of Pennsylvania and are residents of the Commonwealth of Pennsylvania.

6

42.     Venue is also proper in this District under § 1391(b)(2) because a substantial part of the events or omissions giving rise to Nautilus's claims occurred in the Eastern District of Pennsylvania.

43.     A substantial part of the events or omissions giving rise to Nautilus's claims occurred in the Eastern District of Pennsylvania.

44.     The Nautilus Policy at issue was issued to Hammers in the State of Pennsylvania.

45.     The injuries at issue in the Underlying Action, for which Hammers, Fitler and Sansom seek coverage under the Nautilus Policy, occurred in the Eastern District of Pennsylvania as Siarhei Marhunou allegedly sustained injuries in Philadelphia County, which the Eastern District of Pennsylvania encompasses.

46.     The Underlying Action for which Nautilus is providing a defense to Hammers and Fitler is pending in the Philadelphia County Common Pleas Court, which the Eastern District of Pennsylvania encompasses.

47.     Any underlying settlement or judgment, if any, for which Hammers, Fitler and Sansom seek indemnification under the Nautilus Policy will take place, if ever, within the Eastern District of Pennsylvania.

## V.     FACTUAL BACKGROUND

### A.     The Project and Subcontract Agreement

48.     The Underlying Action seeks recovery of damages arising out of and relating to Siarhei Marhunou being injured on **December 15**, 2021.

49.     Upon information and belief, **two days later**, on **December 17**, 2021, Hammers and Fitler executed a "Subcontractor Agreement," with an effective date of **December 16**, 2021.

50.     Upon information and belief, no written contract between Hammers and Fitler existed on or prior to December 15, 2021 that required Hammers to provide contractual indemnity or additional insured coverage to Fitlers.

51.     Pursuant to the Subcontractor Agreement, the Subcontractor [Hammers] was to "provide all supervision, labor, and materials necessary to install all needed exterior roofing and siding systems located at 2330 Sansom Street, Philadelphia, PA 19103." (the "Project").

52.     The Subcontractor Agreement also required Hammers to provide a Certificate of Insurance that names Fitler and Sansom as "additional insureds" on Hammer's commercial general liability policy.

53.     Upon information and belief, the Project consisted of the construction of five new residential townhomes at 2330 Sansom Street, Philadelphia, PA 19103.

54.     Upon information and belief, on or about November 18, 2021, Hammers and DPSY, LLC entered into a "Subcontractor Agreement," under which DPSY, as subcontractor, agreed to install siding, gutters, and downspouts for the Project, as well as, to "defend, indemnify, and hold harmless Hammers Contractors Inc. . . . from and against any and all claims, demands, injuries, fines, penalties, losses, expenses (including attorneys fees) damages and liabilities of every nature, including contractual liability. . . arising from or relating to work performed by [DPSY]" on the Project.

55.     Upon information and belief, at the time of his alleged injury, Siarhei Marhunou was either an employee of DPSY or an independent contractor retained by DPSY, acting within the course and scope of his duties.

B.     **The Underlying Action**

56.     Marhunova initiated an action, *Hanna Marhunova v. Fitler Construction Group, LLC et al.*, Philadelphia Court of Common Pleas, May Term, Case Id. 220501520 (the "Underlying Action"), with a complaint filed on May 17, 2022.

57.     On October 2, 2023, Marhunova filed a Second Amended Complaint, which is now the operative pleading in the Underlying Action.

58.     A true and correct copy of the Second Amended Complaint is attached as Exhibit "A."

59.     In the Second Amended Complaint, Marhunova seeks damages for negligence and under statutes governing wrongful death and survival actions for injuries and death sustained by Siarhei Marhunou in a December 15, 2021 construction accident.

60.     Marhunova alleges, among other things, that Siarhei Marhunou was assisting with construction work atop the balcony of a new residential home when he suddenly and unexpectedly fell.

61.     Marhunova further alleges that the guard railings were "grossly inadequate, defectively installed, and in violation of numerous safety regulations" and as a result, the guard rail gave way, causing Siarhei Marhunou to fall over four stories down to the street below and to suffer catastrophic and fatal injuries.  Marhunova Second Am. Compl., ¶¶ 26-35 (Ex. A).

62.     Marhunova also alleged the following facts about the construction accident that allegedly resulted in serious injuries and death:

> 26.  On December 15, 2021, Siarhei Marhunou was lawfully working on a balcony during the erection of new residential town homes at 2330 Sansom Street in Philadelphia, Pennsylvania (the "Project").

> * * *

28.  At all times relevant hereto, Mr. Marhunou was an employee of DPSY, Inc.

29.  On December 15, 2021, Mr. Marhunou, while acting in the course and scope of his employment, was assisting with construction work atop the balcony of a new residential home.

30.  Specifically, Mr. Marhunou was performing siding work on the Project.

31.  The balcony on which Mr. Marhunou was standing was over four-stories above the ground.

32.  While working on the balcony, Mr. Marhunou was suddenly and unexpectedly caused to fall.

33.  As Mr. Marhunou fell, he came into contact with guard rails attached to the side of the balcony, which were created, installed, inspected, and maintained by one or more of the Defendants.

* * *

35.  Mr. Marhunou came into contact with the guard rail which gave way, causing him to fall to his death.

63.     In Count I of the Second Amended Complaint, Marhunova alleges, among other things, that Defendants Fitler and Sansom were negligent and their negligence included, among other things, failures to provide a safe workplace. *Id.*, at ¶¶ 84 (a)-(jj) (Ex. A).

64.     In Count IV of the Second Amended Complaint, Marhunova alleges, among other things that Hammers was negligent and that its negligence included failures to provide a safe workplace. *Id.*, at ¶¶ 144 (a)-(jj) (Ex. A).

65.     In Count VI of the Second Amended Complaint, Marhunova asserts her entitlement to damages under Pennsylvania's Wrongful Death Act against all Defendants. *Id.*, at ¶¶ 167-172 (Ex. A).

66.     Additionally, in Count VII, Marhunova asserts her entitlement to damages under Pennsylvania's Survival Statute against all Defendants. *Id.*, at ¶¶ 173-76 (Ex. A).

C.   **Nautilus's Investigation Concerning The Subcontractor Agreement Between Fitler And Hammers**

67.    Upon information and belief, a "Subcontractor Agreement" was executed between Fitler and Hammers on December 17, 2021, with an effective date of December 16, 2021.

68.    That Agreement is dated **after** the date of Siarhei Marhunou's alleged fall and death – on December 15, 2021.

69.    In response to Nautilus's inquiry concerning any agreements or contracts between Fitler and other parties to the Underlying Action, Fitler identified only one document – providing Nautilus with a copy of the Subcontractor Agreement (executed on December 17, 2021, with an effective date of December 16, 2021) and stating that "the referenced agreement is a written document which speaks for itself."

70.    A true and correct copy of the relevant portions of Fitler's responses to Nautilus's investigation and the Subcontract Agreement Fitler provided are attached hereto as Exhibit "D".

D.   **The Nautilus Policy**

71.    Nautilus issued to Hammers Contractors, Inc. a commercial lines insurance policy, NN1257264, effective May 7, 2021 to May 7, 2022, which provides certain commercial general liability insurance coverage ("Nautilus Policy").

72.    A true and correct copy of the Nautilus Policy, is attached as Exhibit "E."

73.    The Nautilus Policy provides, in part, the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The

11

words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

SECTION I – COVERAGES

COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and....

12

\* \* \*

e.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

\* \* \*

2.  Exclusions

This insurance does not apply to:

\* \* \*

b.  Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

SECTION II – WHO IS AN INSURED

\* \* \*

1.  If you are designated in the Declarations as:

    \* \* \*

    d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    \* \* \*

2.  Each of the following is also an insured:
    a.  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business…

    \* \* \*

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

    \* \* \*

7.  Separation Of Insureds
    Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
    a.  As if each Named Insured were the only Named Insured; and
    b.  Separately to each insured against whom claim is made or "suit" is brought.

    \* \* \*

SECTION V – DEFINITIONS

    \* \* \*

26482016v1

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

5. "Employee" includes a "leased worker". "Employee does not include a "temporary worker."

\* \* \*

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include "temporary worker."

\* \* \*

13 "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

*See* CG 00 01 04 13, pp. 1-16 of 16 (Ex. E)

74.    The Nautilus Policy contains an endorsement, titled L216 (04/16), which amends the definition of "insured contract," in pertinent part, as follows:

9. "Insured contract" means:

\* \* \*

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extend your

15

assumption of the tort liability is permitted by law.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

*See* L216 (04/16) (Ex. E).

75.     The Nautilus Policy also contains an endorsement, form L205 (11/10), entitled "EXCLUSION - INJURY TO EMPLOYEES, CONTRACTORS, VOLUNTEERS AND OTHER WORKERS".

76.     The L205 Exclusion modifies the Policy as follows:

A.  Exclusion e. Employer's Liability of 2. Exclusions of SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY is replaced by the following:

This insurance does not apply to:

e.  **Injury to Employees, Contractors, Volunteers and Other Workers**

"Bodily injury" to:

(1) "Employees" "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors of any insured; or

(2) Any insured's contractors', subcontractors', or independent contractors' "employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors

arising out of and in the course of:

(a) Employment by any insured; or

(b) Directly or indirectly performing duties related to the conduct of any insured's business; or

(3) The spouse, child, parent, brother or sister of that "employee", "leased worker", "temporary worker", "volunteer worker", statutory "employee", casual worker, seasonal worker, contractor, subcontractors, or

16

independent contractor arising out of Paragraph **(1)** or **(2)** above.

   This exclusion applies:

(1) Regardless of where the:

   (a)  Services are performed; or

   (b)  "Bodily injury" occurs; and

(2) Whether any insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. Exclusion a. Any Insured of 2. Exclusions of SECTION I – COVERAGE C – MEDICAL PAYMENTS is replaced by the following:

We will not pay expenses for "bodily injury":

    **a.  Any Insured**

      To any insured.

*See* L205 (11/10) (Ex. E).

77.    The Nautilus Policy contains an endorsement, form L815 (10/19), entitled "ARTISAN CONTRACTOR EXTENSION - ADDITIONAL INSURED - WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US - AUTOMATIC STATUS WHEN REQUIRED IN A WRITTEN CONTRACT OR AGREEMENT" (the "L815 Endorsement").

78.    The L815 Endorsement modifies the Policy as follows:

A.  Additional Insured – Automatic Status When Required In Contract Or Agreement

1. Section II – Who Is An Insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

    a. Your acts or omissions; or
    b. The acts or omissions of those acting on our behalf;

17

in the performance of your ongoing operations for the additional insured.

\* \* \*

2. This insurance shall not apply to claims, "suits" or damages arising out of the acts, omissions or negligence of the additional insured(s).

3. With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of, or the failure to render any professional architectural or engineering or surveying services, including:

> a. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or
> b. Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against the insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or to which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional or architectural, engineering or surveying services.

*See* L815 (10/19), pp. 1-2 of 2 (Ex. E).

### E. Nautilus's Defense Of Hammers In The Underlying Action

79.    Hammers requested that Nautilus defend and indemnify it under the Nautilus Policy, in connection with the Underlying Action.

80.    In response, Nautilus offered to provide a defense, subject to a full reservation of rights.

81.    Among other things, Nautilus cited the L205 Exclusion and reserved all rights under the Nautilus Policy to deny or limit coverage, including to seek a declaration regarding

18

Nautilus's obligations, if any, under the Nautilus Policy, and to seek a declaration that Nautilus may withdraw from the defense of Hammers, in connection with the Underlying Action.

82.     Hammers accepted Nautilus's offer of a defense under the Nautilus Policy pursuant to Nautilus's reservation of rights.

83.     To date, Fitler has not provided Nautilus with any information or explanation that would establish that the L205 Exclusion does not exclude coverage for the Underlying Action.

        **F.      Nautilus's Defense Of Fitler In The Underlying Action**

84.     Fitler requested that Nautilus defend and indemnify it under the Nautilus Policy, in connection with the Underlying Action.

85.     In response, Nautilus offered to provide a defense, subject to a full reservation of rights.

86.     Among other things, Nautilus cited the L205 Exclusion and reserved all rights under the Nautilus Policy to deny or limit coverage, including to seek a declaration regarding Nautilus's obligations, if any, under the Nautilus Policy, and to seek a declaration that Nautilus may withdraw from the defense of Fitler, in connection with the Underlying Action.

87.     Fitler accepted Nautilus's offer of a defense under the Nautilus Policy pursuant to Nautilus's reservation of rights.

88.      By way of letter dated May 16, 2023, Nautilus requested additional information from Fitler to assist in its ongoing determination of coverage.

89.      On September 26, 2023, in response to Nautilus's request for additional information, Fitler provided Nautilus with a copy of the Subcontractor Agreement between Fitler and Hammers, stating that "the referenced agreement is a written document which speaks for itself" and attached a copy of the Subcontractor Agreement between Fitler and Hammers executed on December 17, 2021, purportedly effective December 16, 2021.  *See* Ex. D.

19

26482016v1

90.     To date, Fitler has not provided Nautilus with any information or explanation that would establish that the L205 Exclusion does not exclude coverage for the Underlying Action.

**G.     Nautilus's Declination Of Coverage, Including A Defense, For Sansom**

91.     Nautilus is not defending Sansom in the Underlying Action.

92.     By way of letter dated May 24, 2023, Nautilus denied coverage to Sansom in connection with the Underlying Action.

93.     To date, Sansom has not disputed Nautilus's declination of coverage.

94.     Pursuant to the Declaratory Judgements Act, 28 U.S.C. § 2201, Nautilus is entitled to a judicial determination concerning the parties' rights and obligations, if any, under the Nautilus Policy, in connection with the Underlying Action, including a declaration that Nautilus has no duty to defend or indemnify any party in connection with the Underlying Action -- for the reasons explained in each successive Count seeking relief.

## COUNT I – DECLARATORY JUDGMENT

**Nautilus Has No Duty To Defend or Indemnify Fitler – Because Fitler Is Not An Insured**

95.     Nautilus incorporates by reference all of the allegations above, as though they were set forth in this demand for relief.

96.     Fitler is not a named insured under the Nautilus Policy, nor does the Nautilus Policy expressly identify Fitler as an additional insured.

97.     While the Nautilus Policy contains certain additional insured provisions, none of those provisions provide additional insured coverage to Fitler for the Underlying Action.

98.     The Nautilus Policy contains form L815 (10/19), entitled "Artisan Contractor Extension – Additional Insured – Waiver Of Transfer Of Rights Of Recovery Against Others To Us – Automatic Status When Required In A Written Contract or Agreement."

99.     Form L815 amends Section II – Who Is An Insured provision of the Nautilus Policy, in part, to "include as an additional insured any person or organization for whom you are performing operations when you and such person have agreed in writing that such person or organization be added as an additional insured on your policy. . . However, the insurance afforded to such additional insured. . . will not be broader than that which you are required by the contract or agreement to provide for such additional insured."

100.    The Subcontractor Agreement between Fitler and Hammers was executed on **December 17, 2021**, with an effective date of **December 16, 2021**.

101.    Siarhei Marhunou's injuries at issue in the Underlying Action occurred on **December 15, 2021**.

102.    The Subcontractor Agreement between Fitler and Hammers was <u>not</u> in effect on the date of Siarhei Marhunou's injuries.

103.    Because Hammers was not obligated to provide any additional insured coverage to Fitler on the date of Siarhei Marhunou's injuries, Fitler does not qualify as an "additional insured" under the Nautilus Policy in connection to the Underlying Action.

104.    There are, or may be, depending on the outcome of the Underlying Action, other reasons why Fitler is not entitled to a defense and/or indemnity coverage under the Nautilus Policy, in connection with the Underlying Action, including but not limited to by operation of other applicable terms, conditions, exclusions, and limitations, including those not quoted or discussed herein, such as those related to whether coverage, if any, under the Nautilus Policy is excess to other insurance available to Fitler.

105.    Nautilus is therefore entitled to a declaration that it has no duty under the Nautilus Policy to defend or indemnify Fitler in connection with the Underlying Action.

21

**WHEREFORE**, Nautilus respectfully requests that this Court enter an Order:

    (a)    Declaring that, under the Nautilus Policy, Nautilus has no duty to defend or indemnify Fitler in connection with the Underlying Action;

    (b)    Declaring that, because Nautilus has no duty to defend or indemnify Fitler, Nautilus is entitled to withdraw the defense it heretofore has provided Fitler in the Underlying Action; and

    (c)    Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Nautilus may be entitled and which this Court deems just and proper.

## COUNT II – DECLARATORY JUDGMENT

### Nautilus Has No Duty To Defend Or Indemnify Sansom – Because Sansom Is Not An Insured

106.    Nautilus incorporates by reference all of the allegations above, as though they were set forth in this demand for relief.

107.    Sansom is not a named insured under the Nautilus Policy, nor does the Nautilus Policy expressly identify Sansom as an additional insured.

108.    While the Nautilus Policy contains certain additional insured provisions, none of those provisions provide additional insured coverage to Fitler for the Underlying Action.

109.    The Nautilus Policy contains the L815 Endorsement, discussed in paragraphs 98. to 99. above.

110.    The L815 Endorsement provides, in part, "Section II – Who Is An Insured" is amended to include as an additional insured any person or organization for whom you are performing operations when you and **such person or organization** have agreed in writing in a

contract or agreement that **such person or organization** be added as an additional insured on your policy." (emphasis added).

111.    The term "you" is defined in the Nautilus Policy as the named insured, Hammers.

112.    Upon information and belief, there is no written contract or agreement between Hammers and Sansom, let alone any such written contract or agreement in effect on the date of Siarhei Marhunou's injuries.

113.    The Subcontractor Agreement between Fitler and Hammers, under which Hammers allegedly agreed to add Sansom as an "additional insured" to its commercial general liability insurance, was not executed until **December 17, 2021**, and effective until **December 16, 2021**.

114.    The Subcontractor Agreement is not a written contract or agreement between Hammers and Sansom.

115.    The Subcontractor Agreement was <u>not</u> in effect at the time of Siarhei Marhunou's injuries.

116.    Because Hammers was not obligated to provide any additional insured coverage to Sansom on the date of Siarhei Marhunou's injuries, Sansom does not qualify as an "additional insured" under the Nautilus Policy in connection to the Underlying Action.

117.    There are, or may be, depending on the outcome of the Underlying Action, other reasons why Sansom is not entitled to a defense and/or indemnity coverage under the Nautilus Policy, in connection with the Underlying Action, including but not limited to by operation of other applicable terms, conditions, exclusions, and limitations, including those not quoted or discussed herein, such as those related to whether coverage, if any, under the Nautilus Policy is excess to other insurance available to Sansom.

118.    Nautilus is therefore entitled to a declaration that it has no duty under the Nautilus Policy to defend or indemnify Sansom in connection with the Underlying Action.

**WHEREFORE**, Nautilus respectfully requests that this Court enter an Order:

(a)    Declaring that, under the Nautilus Policy, Nautilus has no duty to defend or indemnify Sansom in connection with the Underlying Action;

(b)    Declaring that, because Nautilus has no duty to defend or indemnify Sansom, Nautilus is entitled to withdraw the defense it heretofore has provided Sansom in the Underlying Action; and

(c)    Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Nautilus may be entitled and which this Court deems just and proper.

## <u>COUNT III – DECLARATORY JUDGMENT</u>

### <u>Nautilus Has No Duty To Defend Or Indemnify Hammers, Fitler or Sansom – Because Of The L205 Exclusion</u>

119.    Nautilus incorporates by reference all of the allegations above, as though they were set forth in this demand for relief.

120.    The L205 Exclusion, quoted in paragraph 76. above, provides, in part, that the "insurance does not apply to...'[b]odily injury' to:

(1)    'Employees', 'leased workers', 'temporary workers', 'volunteer workers', statutory 'employees', causal workers seasonal workers, contractors, subcontractors, or independent contractors of any insured; or

(2)    Any insured's contractors', subcontractors', or independent contractors', 'employees', 'leased workers', 'temporary workers',

24

'volunteer workers', statutory 'employees', causal workers seasonal workers, contractors, subcontractors, or independent contractors

arising out of and in the course of:

(a) employment by any insured; or
(b) directly or indirectly performing duties related to the conduct of any insured's business."

121.     The L205 Exclusion also bars "bodily injury" coverage to "the spouse. . . of that 'employee', 'leased worker', 'temporary worker', 'volunteer worker', statutory 'employee', causal worker, seasonal worker, contractor, subcontractors, or independent contractor arising out of Paragraph (1) or (2) above."

122.     The Underlying Action alleges "bodily injury," as defined and used in the Nautilus Policy, because it alleges "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  *See* CG 00 01 04 13, p. 13 of 16 (Ex. E).

123.     The Underlying Action alleges that Siarhei Marhunou was an employee of DPSY; that Siarhei Marhunou was acting in the course and scope of his employment at the time of the accident; and that as a result of the accident, Siarhei Marhunou suffered catastrophic and fatal injuries.

124.     DPSY was a subcontractor of Hammers on that date of Siarhei Marhunou's injury.

125.     Further, the parties to the Underlying Action either admit (in the case of plaintiff and Fitler) that Siarhei Marhunou was an employee of DPSY or admit (in the case of DPSY) that he was an independent contractor of DPSY.

126.     At the time of his injury, Siarhei Marhunou was one (or more) of the following – an insured's (Hammer's) contractors', subcontractors', or independent contractors' "employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", causal workers seasonal workers, contractors, subcontractors, or independent contractors.

25

127.     No party to the Underlying Action contends that Siarhei Marhunou was something other than one (or more) of the following – DPSY's (a) employee, (b) leased worker, (c) temporary worker, (d) volunteer worker, (e) statutory employee, (f) causal worker, (g) seasonal worker, (h) contractor, (i) subcontractor <u>or</u> (j) independent contractor.

128.     Additionally, at the time of his injury, Siarhei Marhunou was directly or indirectly performing duties related to the conduct of an insured's business (*e.g.*, Hammers).

129.     As such, the L205 Exclusion precludes coverage for the claims and damages alleged in the Underlying Action.

130.     Nautilus thus has no duty under the Nautilus Policy to defend or indemnify Hammers, Fitler or Sansom, or to pay any judgment or settlement in favor of Marhunova in connection with the Underlying Action.

131.     Nautilus is therefore entitled to a declaration that it has no duty under the Nautilus Policy to defend or indemnify Hammers, Fitler or Sansom in connection with the Underlying Action.

132.     Nautilus continues to reserve all rights to further deny coverage to Hammers, Fitler and Sansom for any other reason available under the Nautilus Policy and/or applicable law.

**WHEREFORE**, Nautilus respectfully requests that this Court enter an Order:

    (a)    Declaring that, under the Nautilus Policy, Nautilus has no duty to defend or indemnify Hammers, Fitler or Sansom in connection with the Underlying Action;

    (b)    Declaring that, because Nautilus has no duty to defend or indemnify Hammers, Fitler or Sansom, Nautilus is entitled to withdraw the defense it heretofore has provided Hammers and Fitler in the Underlying Action; and

(c)     Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Nautilus may be entitled and which this Court deems just and proper.

## COUNT IV – DECLARATORY JUDGMENT

### Nautilus Has No Duty To Indemnify Any Punitive Damages Awarded In The Underlying Action

133.    Nautilus incorporates by reference all of the allegations above, as though they were set forth in this demand for relief.

134.    The Nautilus Policy contains endorsement L217 (06/17), entitled "EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGES" (the "L217 Exclusion").

135.    The L217 Exclusion provides that "This insurance does not apply to punitive or exemplary damages, including but not limited to those damages that may be imposed to punish a wrongdoer or to deter others from engaging in a similar behavior."

136.    To the extent that any punitive or exemplary damages are awarded or paid in the Underlying Action, Nautilus has no duty to indemnify such damages.

**WHEREFORE**, Nautilus respectfully requests that this Court enter an Order:

(a)     Declaring that, under the Nautilus Policy, Nautilus has no duty to indemnify Hammers, Fitler or Sansom for any punitive or exemplary damages awarded or paid in connection with the Underlying Action;

(b)     Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief

27

available at law or in equity to which Nautilus may be entitled and which this Court deems just and proper.

## COUNT V – DECLARATORY JUDGMENT

**Even If Fitler Or Sansom Were Insureds (Which They Are Not), Nautilus Has No Duty To Defend Or Indemnify Fitler Or Sansom – Because Of Other Provisions In The Nautilus Policy**

137.    Nautilus incorporates by reference all of the allegations above, as though they were set forth in this demand for relief.

138.    The L815 Endorsement provides that "[t]his insurance shall not apply to claims, 'suits' or damages arising out of the acts, omissions or negligence of the additional insured(s)."

139.    The Underlying Action alleges that Siarhei Marhunou's injuries arose out of the acts, omissions or negligence of Fitler and/or Sansom.

140.    As such, the Underlying Action constitutes a claim or "suit" arising out of the acts, omissions or negligence of Fitler and Sansom.

141.    To the extent that either Fitler or Sansom are determined to be an additional insured, this provision of the L815 Endorsement precludes coverage for them as to the Underlying Action.

142.    Additionally, the L815 Endorsement provides that "The insurance afforded to the additional insured will be Primary Insurance and Noncontributory, but only if such claims, 'suits' or damages arise out of the sole negligence of the Named Insured."

143.    To date, there has been no determination in the Underlying Action or elsewhere that that the claims and damages alleged in the Underlying Action arise out of the sole negligence of Nautilus's named insured, Hammers.

144.    As such, even if Fitler or Sansom were entitled to coverage (which they are not), the Nautilus Policy is not primary and non-contributory as to them.

**WHEREFORE**, Nautilus respectfully requests that this Court enter an Order:

(a)    Declaring that, under the Nautilus Policy, Nautilus has no duty to defend or indemnify Fitler or Sansom in connection with the Underlying Action;

(b)    Declaring that, because Nautilus has no duty to defend or indemnify Fitler, Nautilus is entitled to withdraw the defense it heretofore has provided Fitler in the Underlying Action; and

(c)    Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Nautilus may be entitled and which this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Nautilus hereby demands a trial by jury of issues so triable.

**POST & SCHELL, PC**

Dated:  October 27, 2023            BY:    */s/ Anthony L. Miscioscia*
                                              Anthony L. Miscioscia (PA ID # 69215)
                                              1600 John F. Kennedy Blvd., 13th Floor
                                              Philadelphia, PA 19103-7395
                                              (215) 587-1170
                                              *Attorney for Plaintiff,*
                                              *Nautilus Insurance Company*

26482016v1